Jeffrey Vincent SMITH,
Petitioner-Appellant,

v.

Jiro J. ENOMOTO, Director, California
Department of Corrections,
Respondent-Appellee.

No. 79–2560.

United States Court of Appeals,
Ninth Circuit.

March 31, 1980.

Therene Powell, Deputy State Public Defender, Los Angeles, Cal., for petitioner-appellant.

Mark Alan Hart, Deputy Atty. Gen., Los Angeles, Cal., for respondent-appellee.

Before SNEED and FERGUSON, Circuit Judges, and SMITH *, District Judge.

RUSSELL E. SMITH, Senior District Judge:

Petitioner was convicted of second-degree burglary in the California courts. Following the exhaustion of his state remedies, he filed a petition for a writ of habeas corpus in the United States District Court. From the denial of that petition he takes this appeal.

Petitioner, by his choice, appeared pro se in the state court proceedings. He was incarcerated between the time of arrest and the time of trial. He moved for an order requiring the state to provide funds for the employment of an investigator, and later requested that the court appoint an investigator. In neither motion did petitioner indicate what his defense would be or relate any facts which would support the need for an investigator. The court denied both motions, and the sole basis for this petition is that, as a result, petitioner was denied due process and equal protection of the laws.

Petitioner contends that at the time of the burglary he was unconscious; that, by virtue of his incarceration, he was personally unable to investigate; that, if an investigator had been appointed, he might have been able to find evidence that on the morning of the crime a person known only as "Leonard" had, without petitioner's knowledge, put "acid" in a "joint" which petitioner smoked, rendering him unconscious; that a general questioning of persons near the scene of the crime might have revealed that someone had seen petitioner, then drugged, being assisted into the burglarized apartment; that an unknown person, a cellmate of petitioner's, would have testified that when petitioner was brought into the cell he was unconscious. It is urged that all of this would have corroborated petitioner's claim of unconsciousness.

* The Honorable Russell E. Smith, United States Senior District Judge for the District of Montana, sitting by designation.

We assume without deciding that an investigator might have found evidence supporting in some degree petitioner's defense and that the denial of such services was prejudicial.

This bring us to the pivotal question: Is a defendant appearing pro se, who is incarcerated prior to trial, entitled to state-funded investigative services without making any showing of need? The present rule is that an indigent defendant has a constitutional right to investigative services (*Mason v. Arizona,* 504 F.2d 1345 (9th Cir. 1974)), but that such right comes into existence only when some need is demonstrated by the defendant. *See Hoback v. Alabama,* 607 F.2d 680 (5th Cir. 1979); *United States v. Davis,* 582 F.2d 947 (5th Cir. 1978); *United States v. Mundt,* 508 F.2d 904 (10th Cir. 1974), *cert. denied,* 421 U.S. 949, 95 S.Ct. 1682, 44 L.Ed.2d 103 (1975); *Mason v. Arizona,* 504 F.2d at 1352.

Petitioner argues, citing *Britt v. North Carolina,* 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971), that, where a defendant is represented by an attorney, the attorney can conduct the ordinary routine investigation which a pro se defendant in custody cannot; that it should be presumed that such a defendant is entitled to investigative help; and that the presumption should control unless rebutted by the state. We believe that *Britt* does establish a presumption rebuttable by the state where the subject matter of the request is a transcript of a prior trial. We refuse, however, to extend the doctrine of *Britt* to investigative services.

*Britt* does no more than generalize the time-honored belief that a transcript of the prior testimony of any witness is essential to proper trial preparation. With the transcript a lawyer may determine how the substance of the testimony fits into the pattern of the prosecution or defense, as the case may be. In addition, as indicated by Justice Marshall speaking for the majority and Justice Douglas in dissent in *Britt,* the transcript furnishes a basis for the impeachment of witnesses by prior contradictory statements. The impeachment in some cases may be effective only where counsel has readily available the exact language used on the prior occasion rather than some memory-produced approximation of it. The belief is so thoroughly held that rarely is an important civil case tried before every important witness has been deposed.

A generalization is not possible where investigative services are involved. In many cases a lawyer, after talking to a client, knows that any investigation would be futile. In others the lawyer may secure such investigation as is needed by available processes of discovery. Petitioner urges that he was denied the kind of routine discovery which a lawyer would conduct in every case, but the fact is that what might be routine in one case is not necessarily so in another. In this case the kind of investigation which petitioner says should have been conducted would never have been conducted as a matter of routine by any lawyer. Not until petitioner himself had indicated to his lawyer the facts, which he now says that he knew, pointing to the need for corroboration of his claim of unconsciousness, would a lawyer have made the investigation which petitioner says should have been made. Had petitioner indicated to the court as much as he would have had to indicate to a lawyer, the problem here would be an entirely different one.

For the reasons indicated we hold that there is no presumption of need for investigative services and that petitioner was not entitled to them until he indicated need.

The judgment is affirmed.