**Mack STUBBS, Petitioner,**

v.

**Dale THOMAS, Superintendent of Metropolitan Correction Center, Respondent.**

**No. 83 Civ. 3079 (MJL).**

United States District Court, S.D. New York.

June 7, 1984.

Heath, Rosenthal & Weissman by Gregg Friedman, Syracuse, N.Y., for petitioner; Alan Rosenthal, Syracuse, N.Y., of counsel.

Elizabeth Holtzman, Dist. Atty., Kings County, by Debra W. Petrover, Brooklyn, N.Y., for respondent.

## MEMORANDUM OPINION AND ORDER

LOWE, District Judge.

Before this Court is a petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. Petitioner, Mack Stubbs, claims that the ineffective assistance of his state appointed investigator constituted a denial of his rights under the sixth and fourteenth amendments to the United States Constitution. In addition, petitioner claims that his failure to receive adequate investigative assistance denied him his right to a fair trial guaranteed by the due process clause of the fifth and fourteenth amendments. As set forth below, this Court finds that the petition must be denied.

## FACTS

On December 8, 1972 Ernest Ballestero was stabbed to death on a street in Brooklyn, New York. Two months later, on February 14, 1973 petitioner Mack Stubbs, was arrested and charged with Ballestero's murder. He was arraigned on March 9, 1973 in New York Supreme Court, Kings County, and attorney Barry Agolnick, Esq. was appointed by the court to represent him pursuant to Article 18–B, § 722 of the County Law of New York. On October 1, 1973 Mr. Agolnick requested assignment of an investigator pursuant to Article 18–B, § 722, of the County Law and on November 1, Herman Race was appointed. On November 26, 1973 petitioner moved pro se for a change of counsel and on December 18, 1973 that motion was granted and new counsel, Barry Kamins was assigned.

Prior to trial, petitioner told Mr. Kamins that at the time the murder was committed (5:35 p.m.), he was working in New Jersey with Willie McNeil. McNeil was employed as a carpet installer at Perry Carpets at 465 Franklin Avenue, Franklin Square, Long Island, and petitioner was allegedly helping him install carpet on the day of the murder. The steps taken by Mr. Kamins and petitioner's court appointed investigator, Mr. Race, to investigate petitioner's alibi defense, are the subject of detailed factual findings by Judge Knapp of this Court in a related habeas action brought by petitioner. These findings are discussed in full, *infra*, at pp. 97–98 of this Opinion. Suffice it to say for the present, that both Mr. McNeil and Mr. Race informed Mr. Kamins that they had attempted to locate McNeil's work records for the date in question, but that such records were unavailable. Thus McNeil was unable to review the records prior to testifying at petitioner's trial.

Petitioner's trial commenced on August 29, 1974. The case against the petitioner rested almost entirely on the testimony of two eye witnesses, Lois Ormand and Hattie Freeman. The witnesses testified that they first met petitioner on December 7, 1972, the day before the murder, when James McNeil[1] brought petitioner to Ms. Freeman's apartment and introduced him as his cousin. They further testified that

---

1. James McNeil is of no relation to Willie McNeil.

they spent several hours on the following day, December 8, 1974, at Ms. Freeman's apartment socializing and drinking with petitioner, James McNeil, and Ernest Ballestero (the deceased). At approximately 5:30 that afternoon the group left the apartment to go buy more food and liquor. Ms. Freeman testified that as they left the apartment, petitioner said to her that "one of us will not be coming back." Both witnesses testified that as they walked down the street, Ms. Freeman and Mr. McNeil walked ahead, with Ms. Ormand, petitioner and Mr. Ballestero following behind. According to Ms. Ormand, Mr. Ballestero was walking in between her and petitioner, when she heard Ballestero exclaim "oh". She turned to see petitioner pulling a knife out of Ballestero's chest. Ms. Ormand testified that petitioner then ran down the street shouting "I got him". Ms. Freeman similarly testified that as she turned around to check on the rest of the group, she observed petitioner taking a knife from Ballestero's chest. She then saw petitioner run down the street. Neither Ms. Ormand nor Ms. Freeman actually saw petitioner stab Ballestero, or knew where the knife came from. James McNeil, the only other witness to these events, was never called as a witness. Both Ms. Ormand and Ms. Freeman testified that they did not know Mr. McNeil's whereabouts at the time of trial.

Willie McNeil was the only witness called on behalf of petitioner. McNeil testified that on December 8, 1972 he and petitioner had spent the entire day together, working and socializing. McNeil testified that he was employed as a carpet installer at Perry Carpets, and that petitioner worked as his assistant from November 1972, until December 23, 1972. Petitioner was paid by McNeil and was at no time employed by Perry Carpets. McNeil further testified on direct examination, that on the day of the murder, he and the petitioner were installing carpets in Jersey City and Newark and that at approximately 7:30, when they had completed their work, they went to Dave McDougal's home in Newark, New Jersey until sometime between 10:30 p.m. and 11:00 p.m.[2] McNeil also testified that he had checked with his employer and that said employer no longer had the route slips for December 8, 1972.

The government's cross-examination of McNeil began on August 29, 1974 and resumed after a four day adjournment, on September 3, 1974. On the second day of the cross-examination McNeil acknowledged that he had been mistaken about where he was working on December 8, 1972. He testified that over the weekend someone had located his work record and informed him that he had worked at five different locations in Brooklyn on December 8, and none in New Jersey. The New Jersey jobs had been performed on December 9, 1972, a Saturday. On redirect, McNeil reiterated his testimony that he was working with petitioner until about 7:30 p.m. on December 8. He did not mention visiting the home of Dave McDougal in New Jersey, as he had in his original testimony, and gave no other explanation as to why he remembered being with petitioner on the day in question.

In its summation, the government emphasized McNeil's mistaken recollection as to his work location and attacked his credibility:

> [N]ow the Defense in this case produces a real star witness. This is the star, if I can use counsel's term, who came into this courtroom and told you last Friday "Oh, I remember December 8, 1972 just like yesterday. I know we went to New Jersey …
>
> Very interestingly, there is a recess, and I asked him, "By the way, Mr. McNeil, on December 8, 1972 you didn't work in New Jersey?
>
> A. No, I didn't work in New Jersey.
>
> Q. By the way, Mr. McNeil, you worked in Brooklyn on five jobs?
>
> A. That's right, five jobs. I checked the records.

---

2. McNeil testified that McDougal died before trial.

What did he check—the records that he didn't have? Is that the defense in this case? A witness that comes to this courtroom and has the audacity, before you, in a court of law, to come in here and say on Friday "I was in New Jersey. I remember December 8, 1972, but I don't know what happened on December 8, 1973, and now comes back here and says "Oh yes. He was not with me in New Jersey, but he was with me in Brooklyn."

Is that the defense in this case? Is that the star witness?

I am not going to trouble you by going over each and every question with Mr. McNeil, the real star. But if you wish, the Court will have all the testimony read back to you, with relation to whether he worked on December 5th and 6th and 7th. Mind you, he checked the records on Saturday. I will leave that to you. Credibility, gentlemen? Believability?

Trial Transcript ("T".) 170–173.

The jury found petitioner guilty of murder and on October 7, 1974 petitioner was sentenced to a term of fifteen years to life, which he is currently serving.

### PRIOR PROCEEDINGS

On October 15, 1974 petitioner appealed his conviction to the Appellate Division, Second Department. Among the several grounds raised on appeal, was the claim that he had been denied the effective assistance of counsel. On March 21, 1977 the Appellate Division affirmed petitioner's conviction. *People v. Stubbs*, 56 A.D.2d 897, 393 N.Y.S.2d 41 (2d Dept.1977). Leave to appeal to the Court of Appeals was denied.

Subsequently, petitioner filed a petition for a writ of habeas corpus before Judge Knapp of this Court. By his petition, he claimed: (1) that he was denied his right to a speedy trial due to an 18 month delay and (2) that he was denied the effective assistance of counsel. An evidentiary hearing was held by Judge Knapp in connection with petitioner's ineffective assistance

claim. In a written opinion, the Court dismissed petitioner's speedy trial claim on the ground that petitioner had failed to show actual prejudice. *Stubbs v. Harris*, 480 F.Supp. 523 (S.D.N.Y.1979). The Court also denied plaintiff's claim of ineffective assistance of counsel claim, based on the facts adduced at the hearing. As stated by Judge Knapp:

At that hearing we were satisfied that petitioner's trial counsel, Barry Kamins, Esq., was not negligent or ineffective in representing petitioner, but that the cross-examination fiasco occurred as the result of the inexcusable neglect of duty of Herman Race, the investigator who had been appointed under Article 18–B of the County Law, and to whom Kamins had reasonably entrusted the task of ascertaining the existence or nonexistence of records pertaining to the day about which the witness McNeil was to testify.

*Id.* at 526.

At the hearing before Judge Knapp, Kamins testified that after being informed of petitioner's alibi defense, he spoke with McNeil several times over the phone, and visited him once at McNeil's home in Brooklyn. He also claimed to have called Robert Harrison, the owner of Perry Carpets, and verified that McNeil worked for Perry. In addition, he inquired whether Perry had records of McNeil's place of employment on the date of the murder, and learned that such records did exist. Subsequently, Kamins instructed Race, by way of letter dated February 20, 1974, to investigate petitioner's alibi. In the letter, Kamins incorrectly stated that Perry Carpets was located at 465 Franklin Avenue, Brooklyn, rather than 465 Franklin Avenue, Franklin Square, Long Island. He also mistakenly indicated that Mr. Harrison was connected with Ideal Carpets, another company located at the same address, for which Perry did installation work on occasion. However, both Harrison's and McNeil's telephone numbers were correctly given in the letter. According to the testimony of Mr. Kamins, Race reported back

to him that he had visited the carpet company and was told that the records in question could not be located.

Mr. Harrison, the president of Perry, also testified at the hearing before Judge Knapp. He indicated that he had no recollection of having been contacted by either Mr. Kamins or Mr. Race, and he was sure that if he had been, he would remember. However, he had a vague recollection of his secretary mentioning that someone had called asking about records. Apparently the caller never followed up. Mr. Harrison further testified that McNeil's work records for December, 1972 had been available at all times, and that if Race or anyone else had requested the records, he would have produced them.

The next witness was Mr. Race. He testified that he had gone to the carpet store in Brooklyn which he had initially recalled being on Utica Avenue, but now believed was on Franklin Avenue, at the address contained in Kamins' letter. He was positive that the store he visited was in Brooklyn. He stated that he spoke to a man there (not Mr. Harrison) who informed him that someone named Mr. McNeil did work there, but that there were no records pertaining to his 1972 employment. He at first stated that he did not recall Harrison's name, but after having his recollection refreshed with Kamins' letter, he then remembered asking for Mr. Harrison and being told that he was unavailable.

Based on the foregoing evidence, the Court found that Kamins could not be faulted for delegating to Race, an apparently qualified professional investigator, the task of investigating McNeil's work records. Thus, there was no basis for finding that Kamins was ineffective in representing petitioner. However, the Court concluded that "Race utterly failed to discharge his responsibility." The Court explained:

It was apparent to us at the hearing that he really had no recollection of the events to which he was testifying, and was simply reconstructing these events from the testimony he had heard (Kamins' and Harrison's) and from the document before him (Kamins' letter). The difficulty is that the objective facts belie his reconstruction. We are satisfied that Race never went anywhere near McNeil's place of employment (or any other carpet company) [footnote omitted] that he never even called Harrison at the telephone number provided in Kamins' letter, and that he simply gave Kamins false information when he claimed to have ascertained that the records were unavailable.

*Id.* at 527.[3]

The Court further found that since petitioner had never presented the question of the investigator's ineffective assistance to the state courts, the claim was unexhausted, and therefore, not subject to habeas corpus review. Nevertheless, the Court went on to note in dicta, that even if petitioner's claim regarding the investigator was properly before the Court, it would probably not warrant habeas relief. Although the Court recognized that gross incompetence of a court appointed investigator, such as Race, might constitute a due process violation, it did not believe that such a violation could be made out on the facts of this case. The Court noted that it could not "be said with any confidence that a single alibi witness—even if unscathed on cross-examination—would have overcome the testimony of two eyewitnesses who claimed a two-day acquaintance with the petitioner." *Id.* at 528, n. 7. Thus it found that "[a]lthough woefully inadequate, Race's conduct did not 'make the trial a farce and mockery of justice.'" [footnote and citations omitted]. *Id.* at 528.

After Judge Knapp's decision was rendered, petitioner returned to state court

---

**3.** The Court also noted:
Our own inquiry to the telephone company reveals that—at least as of this writing—there is neither a Perry Carpet Co. nor an Ideal

Carpets anywhere in Brooklyn, and that no carpet store or company of any sort exists on the 400 block of Brooklyn's Franklin Avenue. *Id.* at 527 n. 5.

and moved to vacate his judgment of conviction, on the ground that Race's neglect of duty deprived him of his right to effective assistance of counsel. The state court found that an investigation of petitioner's alibi defense had been conducted; counsel had consulted petitioner, interviewed the alibi witness several times and verified the witness's place of employment. Thus it was reasonable for counsel to go ahead with the alibi witness. Moreover, the court found that "in view of the totality of evidence produced at trial, it [was] highly unlikely that any such new alibi information would have changed the jury's conclusion." *See* Respondent's Appendix C, at 2. The motion to vacate was denied. Leave to appeal to the Appellate Division was denied.

Petitioner then filed the instant petition claiming that the purposeful and inexcusable neglect of the state appointed investigator effectively deprived him of his sole and meritorious defense of alibi and constituted a denial of rights to effective assistance of counsel and due process under the sixth and fourteenth amendments to the U.S. Constitution.

Petitioner contends that because of Race's failure to adequately investigate his alibi defense and locate McNeil's work records prior to trial, McNeil was unable to refresh his recollection before testifying. As a result, McNeil's credibility was impaired beyond hope of rehabilitation, and his testimony rendered useless. According to petitioner, McNeil's mistaken recollection had a devastating effect on the jury, by conveying the impression that McNeil was lying to protect petitioner.

Respondent argues that the petition should be dismissed without a hearing. It contends that petitioner had failed to demonstrate that the investigator's assistance was inadequate and further that petitioner has not shown actual prejudice such as would warrant habeas relief. Respondent also maintains that petitioner's due process rights were not violated because no fundamental unfairness or serious risk of injustice infected the trial.

## DISCUSSION

*Plaintiff's Ineffective Assistance of Counsel Claim*

The sixth amendment to the United States Constitution provides that "in all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to assistance of counsel means the right to "effective" assistance of counsel. *Cuyler v. Sullivan*, 446 U.S. 335, 344, 352, 100 S.Ct. 1708, 1716, 1720, 64 L.Ed.2d 333 (1980); *see also U.S. v. Morrison*, 449 U.S. 361, 366, 101 S.Ct. 665, 668, 66 L.Ed.2d 564 (1981); *Tollett v. Henderson*, 411 U.S. 258, 266–68, 93 S.Ct. 1602, 1607–08, 36 L.Ed.2d 235 (1973); *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970). In the recent case of *Strickland v. Washington*, —— U.S. ——, ——, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), the Supreme Court expressly held that "the proper standard for attorney performance is that of reasonably effective assistance." This standard requires "that the quality of the defense counsel's representation should be within the range of competence reasonably expected of attorneys in criminal cases." *Trapnell v. United States*, 725 F.2d 149, 153 (2d Cir.1983). However, even where an error by counsel is found to be professionally unreasonable, it will not warrant habeas corpus relief unless the petitioner can demonstrate prejudice. *Strickland v. Washington, supra,* —— U.S. at ——, —— —— ——, 104 S.Ct. at 2064, 2065–2069; *United States v. Cronic,* —— U.S. ——, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

Indeed, as the court in *Moore v. United States*, 432 F.2d 730, (3d Cir.1970) observed:

Adequate preparation for trial often may be a more important element in the effective assistance of counsel to which a defendant is entitled than the forensic skill exhibited in the courtroom.

*Id.* at 735. Similarly, the court in *McQueen v. Swenson* stated:

The most able and competent lawyer in the world can not render effective assistance in the defense of his client if his lack of preparation for trial results in his failure to learn of readily available facts which might have afforded his client a legitimate justiciable defense.

498 F.2d 207 at 217 (8th Cir.1974), *quoting Goodwin v. Swenson,* 287 F.Supp. 166, 182–183 (W.D.Mo.1968).

In recognition of the need for adequate investigation, the Ninth Circuit has held that "the effective assistance of counsel guarantee of the Due Process Clause requires, when necessary, the allowance of investigative expenses or appointment of investigative assistance for indigent defendants in order to insure effective preparation of their defense by their attorneys." [footnote omitted]. *Mason v. Arizona,* 504 F.2d 1345, 1351 (9th Cir.1974), *cert. denied,* 420 U.S. 936, 95 S.Ct. 1145, 43 L.Ed.2d 412 (1975); *see also Smith v. Enomoto,* 615 F.2d 1251, 1252 (9th Cir.), (following *Mason*); *Williams v. Martin,* 618 F.2d 1021, 1027 (4th Cir.1980) (holding that the trial judge's refusal to provide an expert deprived the defendant of the effective assistance of counsel and due process of law in violation of the sixth and fourteenth amendments).

■ The conduct challenged in this case is not that of petitioner's court-appointed attorney, but that of his court-appointed investigator. Therefore, the first issue before this Court is whether an investigator, appointed by the court to assist an indigent criminal defendant and his counsel with pre-trial investigation, should be held to the same constitutional standard of care as a court-appointed attorney. We hold that he should be, and that his failure to provide reasonably competent investigative assistance could constitute a violation of the defendant's sixth amendment right to effective assistance of counsel.

Adequate and effective pre-trial investigation has often been recognized as a crucial element of effective assistance of counsel. As the Supreme Court recognized in *Strickland,* "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." —— U.S. at ——, 104 S.Ct. at 2065. *See also Rummel v. Estelle,* 590 F.2d 103, 104 (5th Cir.1979) ("[I]nvestigation and preparation are the keys to effective representation."); *United States v. DeCoster,* 487 F.2d 1197, 104 (D.C.Cir.1973) (counsel has an obligation to "conduct appropriate investigations, both factual and legal, to determine what matters of defense can be developed."); *Coles v. Peyton,* 389 F.2d 224, 226 (4th Cir.1980), *cert. denied,* 393 U.S. 849, 89 S.Ct. 80, 21 L.Ed.2d 120 (1980) (to the same effect).

■ We need not reach the issue of when, if ever, appointment of an investigator to assist in the defense of an indigent defendant, is constitutionally mandated. We do, however, hold that the right to effective assistance of counsel encompasses the right to adequate investigation and preparation. That right may not be defeated by delegating investigative duties to someone other than counsel. Therefore, where an investigator is appointed, he has a duty to provide the defendant with reasonably competent investigative assistance. His failure to do so may constitute a violation of the defendant's right to effective assistance of counsel under the sixth and fourteenth amendments.

■ We therefore turn to the question of whether Investigator Race's conduct in investigating defendant's alibi defense rose to the level of a constitutional violation. We fully agree with Judge Knapp that the investigator "utterly failed to discharge his responsibilities." *Stubbs v. Harris, supra,* 480 F.Supp. at 527. His performance fell far below the standard of reasonably competent assistance. As Judge Knapp found, the investigator never went to Perry Carpets in Franklin Square, Long Island to investigate the alibi defense. *Stubbs v. Harris, supra,* 480 F.Supp. at 527 (S.D.N.Y.1979); Federal Habeas Hearing, Transcript at 66. Further, he never procured

the work records which had been available to determine the location of the alibi witness's work on the day of the murder. Federal Habeas Hearing, Transcript at 26–27, 37. Finally, the investigator deliberately gave the trial attorney false information, i.e., that he had gone to the carpet company and learned that the work records were not available. *Stubbs v. Harris, supra,* 480 F.Supp. at 527.

Notwithstanding the investigator's misconduct, we do not find a constitutional violation.

As mentioned above, the Supreme Court in *Strickland* made clear that a defendant claiming ineffective assistance of counsel must demonstrate that performance of counsel prejudiced the defense; "[w]hen a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." —— U.S. at ——, 104 S.Ct. at 2067. The Court defined "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." *Id.* In making a determination on the issue of prejudice, the Court "must consider the totality of evidence before the judge or jury." *Id.*

In the present case, the testimony of the two eyewitnesses, who saw petitioner pull a knife from Ernest Ballestero's chest and flee down the street, was overwhelming evidence of petitioner's guilt. The women had spent hours with petitioner, on the days before and of the murder, and were certain of their identification. Furthermore, they had no apparent motive to lie. The defense could do little to challenge their credibility.[4]

In light of the eye witness testimony against petitioner, we find it very unlikely that production of McNeil's work records prior to trial would have changed the jury's verdict. Although production of the work records might have prevented McNeil from testifying inaccurately about the location of his work on the day of the murder, the records would not have established petitioner's whereabouts on the day in question, or have had any direct bearing on his guilt or innocence.[5] Under these circumstances, we do not believe that McNeil's testimony, even if unimpeached, would have been sufficient to overcome the testimony of two credible eyewitnesses to the crime. *See Stubbs v. Harris, supra,* 480 F.Supp. at 528 n. 7. We therefore do not find a reasonable probability that absent the investigator's errors, the fact finder would have had a reasonable doubt respecting guilt.

We recognize that "[i]n certain Sixth Amendment contexts, prejudice is presumed. Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice. So are various kinds of state interference with counsel's assistance." *Strickland, supra,* —— U.S. at ——, 104 S.Ct. at 2065, *citing Cronic, supra,* —— U.S. —— – ——, 104 S.Ct. 2045–2047. However, petitioner's claim in this case falls within none of the above-mentioned categories. The investigator's failure to obtain McNeil's work records was a discrete instance of misconduct. Petitioner was effectively represented by counsel in every other aspect of the state court proceeding. *See Stubbs v. Harris, supra.* Therefore, we hold that peti-

---

**4.** Defense counsel did cross-examine the women with respect to their relationship with James McNeil, the other person present at the time of the murder. He suggested on summation that the women might be lying to protect Mr. McNeil. However, no testimony or other evidence was adduced to support this theory and it clearly did not raise a reasonable doubt in the minds of the jurors. Defense counsel also emphasized that the witnesses had been drinking prior to the murder and that their senses and memory may have been affected.

**5.** In that regard, this case is clearly distinguishable from *Johns v. Perini,* 462 F.2d 1308 (6th Cir.), *cert. denied,* 409 U.S. 1049, 93 S.Ct. 519, 34 L.Ed.2d 501 (1972). In *Johns* the Sixth Circuit reversed a conviction on the ground that defense counsel's failure to investigate defendant's sole defense of alibi denied defendant of the effective assistance of counsel. However, in contrast to the present case, the Court in *Johns* found that employment records which directly corroborated defendant's alibi had been available to counsel.

tioner's ineffective assistance of counsel claim must be denied for failure to demonstrate prejudice.

*Petitioner's Due Process Claim*

Petitioner contends that two fundamental elements of a fair trial were seriously impaired in this case; first, his right to the effective assistance of counsel and second, his right to present the testimony of witnesses in his behalf. Respondent argues that no fundamental unfairness or serious risk of injustice infected the trial.

■ The Court finds that the investigator's failure to locate McNeil's work records did not effectively deprive plaintiff of the right to present his alibi defense. McNeil testified on direct examination that he was working with petitioner at the time of the murder. Furthermore, after cross-examination of McNeil brought out that he had testified incorrectly about the location of his work on the day in question, defense counsel was given a full and fair opportunity to rehabilitate the witness. On redirect, McNeil insisted that although he was mistaken as to the location of his work, he was certain that he had been with the petitioner. Had the work records been available to McNeil prior to trial, he probably would not have testified incorrectly about where he was working on the day of the murder. However, as mentioned above, the records would have done nothing to corroborate McNeil's testimony that he was working with petitioner.

In short, we find that the jury was fairly presented with petitioner's alibi defense and obviously chose to reject it. There was no fundamental unfairness in petitioner's trial. Therefore, petitioner's due process claim must be dismissed.

### CONCLUSION

The Court having found no merit to either petitioner's ineffective assistance of counsel claim, or his due process claim, the petition is hereby dismissed with prejudice.

It Is So Ordered.