[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 110 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 111 
The appellant, Luther Jerome Williams, was convicted of capital murder for killing John Robert Kirk during the course of a robbery. See § 13A-5-40(a)(2), Ala. Code 1975. By a vote of 10-2, the jury recommended that he be sentenced to death. The trial court accepted the jury's recommendation and sentenced the appellant to death. This court and the Alabama Supreme Court affirmed the appellant's conviction on direct appeal, see Williamsv. State, 601 So.2d 1062 (Ala.Crim.App. 1991), aff'd without opinion, (No. 1901682) 662 So.2d 929 (Ala. 1992) (table), and the United States Supreme Court denied the appellant's petition for certiorari review, see Williams v. Alabama, 506 U.S. 957,113 S.Ct. 417, 121 L.Ed.2d 340 (1992). The relevant facts of the case are set forth in our opinion. This court issued a certificate of judgment on April 29, 1992.
On April 8, 1994, the appellant, through counsel, filed a Rule 32 petition, challenging his conviction and sentence of death. He filed an amended petition on July 7, 1994. After the State responded and after conducting an evidentiary hearing, the circuit *Page 112 
court denied the petition in a thorough, 71-page order. This appeal follows.
The appellant raises numerous issues on appeal, including claims that his attorneys rendered ineffective assistance during the proceedings. In reviewing the circuit court's denial of the appellant's petition, we apply the following principles:
 "`"[T]he plain error rule does not apply to Rule 32 proceedings, even if the case involves the death sentence." Thompson v. State, 615 So.2d 129 (Ala.Cr.App. 1992).' Cade v. State, 629 So.2d 38, 41 (Ala.Crim.App. 1993), cert. denied, 511 U.S. 1046, 114 S.Ct. 1579, 128 L.Ed.2d 221 (1994).
 "In addition, `[t]he procedural bars of Rule 32 apply with equal force to all cases, including those in which the death penalty has been imposed.' State v. Tarver, 629 So.2d 14, 19 (Ala.Crim.App. 1993)."
Brownlee v. State, 666 So.2d 91, 93 (Ala.Crim.App. 1995).
 "To prevail on a claim of ineffective assistance of counsel, the defendant must show (1) that his counsel's performance was deficient and (2) that he was prejudiced as a result of the deficient performance. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674
(1984).
 "`The appellant must show that his counsel's performance was unreasonable, considering all of the attendant circumstances. . . . "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690, 104 S.Ct. at 2066.'
 "Duren v. State, 590 So.2d 360, 362 (Ala.Cr.App. 1990), aff'd, 590 So.2d 369 (Ala. 1991), cert. denied, 503 U.S. 974, 112 S.Ct. 1594, 118 L.Ed.2d 310 (1992).
 "When this court is reviewing a claim of ineffective assistance of counsel, we indulge a strong presumption that counsel's conduct was appropriate and reasonable. Luke v. State, 484 So.2d 531, 534 (Ala.Cr.App. 1985). The burden is on the appellant to show that his counsel's conduct was deficient. Luke.
 "`Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.'
 "Strickland, 466 U.S. at 689, 104 S.Ct. at 2065-66. (Citations omitted.) Ex parte Lawley, 512 So.2d 1370, 1372
(Ala.Cr.App. 1987).
 "Initially we must determine whether counsel's performance was deficient. *Page 113 
We must evaluate whether the action or inaction of counsel of which the petitioner complains was a strategic choice. `Strategic choices made after a thorough investigation of relevant law and facts are virtually unchallengeable. . . .' Lawley, 512 So.2d at 1372. This court must avoid using `hindsight' to evaluate the performance of counsel. We must evaluate all the circumstances surrounding the case at the time of counsel's actions before determining whether counsel rendered ineffective assistance. Falkner v. State, 586 So.2d 39
(Ala.Cr.App. 1991)."
Hallford v. State, 629 So.2d 6, 8-9 (Ala.Crim.App. 1992), cert. denied, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 491 (1994).
 "In determining whether a defendant has established his burden of showing that his counsel was ineffective, we are not required to address both considerations of the Strickland v. Washington test if the defendant makes an insufficient showing on one of the prongs. Id. at 697, 104 S.Ct. at 2069. In fact, the Court explained that `[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.' Id. We defer to this guidance and address the `prejudice' prong, for `[w]ith respect to the prejudice component, the lack of merit of [Thomas's] claim is even more stark.' Id. at 699, 104 S.Ct. at 2070."
Thomas v. State, 511 So.2d 248, 255 (Ala.Crim.App. 1987) (footnote omitted).
 "Furthermore, to render effective assistance, an attorney is not required to raise every conceivable constitutional claim available at trial and on appeal. Holladay v. State, 629 So.2d 673 (Ala.Cr.App. 1992), cert. denied, 510 U.S. 1171, 114 S.Ct. 1208, 127 L.Ed.2d 555 (1994); McCoy v. Lynaugh, 874 F.2d 954, 965-66 (5th Cir. 1989). Rather, counsel must be given some discretion in determining which claims possibly have merit, and thus a better chance of success, and which claims do not have merit, and thus have little chance of success. Heath v. State, 536 So.2d 142 (Ala.Cr.App. 1988); Smith v. Murray, 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); Engle v. Isaac, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783
(1982)."
Davis v. State, 720 So.2d 1006, 1014 (Ala.Crim.App. 1998), cert. denied, 525 U.S. 1149, 119 S.Ct. 1049, 143 L.Ed.2d 55
(1999).
 I.
The appellant argues that the circuit court violated his due process rights during the Rule 32 proceedings.
First, the appellant contends that the circuit court erroneously denied his motions for funds to hire a psychologist, a forensic pathologist, and a forensic expert. Citing Ake v.Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), he argues that the State is required to provide indigent defendants with experts to assist in preparing postconviction litigation and that to deny these experts results in the denial of due process. However, this court has held that indigent defendants are not entitled to funds to hire experts to assist in postconviction litigation. See Ford v. State, 630 So.2d 111 (Ala.Crim.App. 1991), aff'd, 630 So.2d 113 (Ala. 1993), cert. denied,511 U.S. 1078, 114 S.Ct. 1664, 128 L.Ed.2d 380 (1994); Holladay v.State, 629 So.2d 673 (Ala.Crim.App. 1992), cert. denied,510 U.S. 1171, 114 S.Ct. 1208, 127 L.Ed.2d 555 (1994); Hubbard v.State, 584 So.2d 895, 900-01 (Ala.Crim.App. 1991), cert. denied, 502 U.S. 1041, 112 S.Ct. 896, 116 L.Ed.2d 798 (1992). In denying the appellant's request for funds to hire a psychologist, *Page 114 
the circuit court cited Ford, supra, in which we held:
 "Ford asserts that the trial court in the Rule 20 [now Rule 32] hearing erred by denying him the assistance of a psychologist of his own choosing in that hearing. No court has ever held that a criminal defendant is entitled to a psychologist, paid for by the State, in a post-conviction proceeding. . . . Ford seeks to expand the court's holding in Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). Ake required the State to provide a psychologist for a criminal defendant at his trial if his sanity at the time of the offense was likely to be a significant factor. Under Ake, the assistance of a psychologist is limited to trial proceedings only."
630 So.2d at 112. Also, in denying the appellant's requests for funds to hire a forensic pathologist and a forensic expert, the circuit court stated:
 "`[T]he fundamental fairness mandated by the Due Process Clause does not require the trial court to approve such funds.' Hubbard v. State, 584 So.2d 895, 900-01
(Ala.Crim.App. 1991). The submissions made in support of said motions do not persuade the court that there are special circumstances requiring the authorization of the requested funding in order to afford Petitioner with due process in this post-conviction proceeding."
(C.R. 417.)
Other jurisdictions have also declined to extend Ake to postconviction or collateral proceedings. See Braun v. State,937 P.2d 505, 515 (Okla.Crim.App. 1997) ("We have said post-conviction proceedings are not intended to be a second direct appeal; they certainly are not intended to be a second trial proceeding. We refuse to undermine that principle by extending Ake to post-conviction proceedings. . . ."); People v. Sanchez,169 Ill.2d 472, 662 N.E.2d 1199, 1214, 215 Ill. Dec. 59, 74, cert. denied, 519 U.S. 967, 117 S.Ct. 392, 136 L.Ed.2d 308 (1996) ("Discussing Ake, we have previously determined `that there is no constitutional requirement that we duplicate the rights of a particular class of individuals in post-conviction proceedings.' (People v. Wright (1992), 149 Ill.2d 36, 61, 171 Ill. Dec. 424, 594 N.Ed.2d 276)."); Teague v. State, 772 S.W.2d 915, 927
(Tenn.Crim.App. 1988), cert. denied, 493 U.S. 874, 110 S.Ct. 210,107 L.Ed.2d 163 (1989), overruled on other grounds by Owens v.State, 908 S.W.2d 923 (Tenn. 1995), and State v. Mixon,983 S.W.2d 661 (Tenn. 1999) ("The petitioner's reliance upon Ake v.Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), is misplaced. The rule created by the United States Supreme Court in this decision does not require the funding of experts in post-conviction proceedings."). For the above-stated reasons, we conclude that the appellant's reliance on Ake is misplaced and that he was not entitled to the funds he requested. Therefore, his argument in this regard is without merit.
The appellant also argues that the circuit court erred in taking judicial notice of the fact that trial counsel's secretary, who helped counsel investigate facts about the case, was black. In its order denying the appellant's petition, the circuit court stated:
 "On several occasions, Dr. Formby [the defense's investigator] was accompanied in his investigations by [trial counsel's secretary]. (EH 384, 408). Because essentially all of the fact and background witnesses in this case are African-Americans, the fact that [trial counsel's secretary] is also an African-American . . . presumably would allow her something of an entree into some of the communities *Page 115 
and other areas into which the investigation was pursued."
(C.R. 660.) The appellant contends that, because trial counsel's secretary had not testified at trial or appeared before the trial court, the court took judicial notice of a fact that was not in evidence. However, under Rule 201, Ala. R. Evid., a court may take judicial notice of any adjudicative fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." In this case, the race of trial counsel's secretary certainly was not subject to reasonable dispute. Therefore, the circuit court did not err in taking judicial notice of the fact that trial counsel's secretary was black. See Bui v. State, 627 So.2d 855 (Ala. 1992), on remand, 627 So.2d 861 (Ala.Crim.App.), cert. denied,508 U.S. 975, 113 S.Ct. 2970, 125 L.Ed.2d 669 (1993) (noting that the circuit judge who tried the case was black). Moreover, the appellant does not argue that the circuit court incorrectly stated the race of trial counsel's secretary, and he has not otherwise shown that he was prejudiced by the circuit court's taking judicial notice of the race of trial counsel's secretary. See
Rule 45, Ala.R.App.P. Therefore, his argument is without merit.
 II.
The appellant next argues that his attorneys rendered ineffective assistance during the penalty phase of his trial.
 A.
First, the appellant contends that his attorneys rendered ineffective assistance because they allegedly did not investigate and present sufficient mitigating evidence during the penalty phase of his trial. Specifically, he contends that counsel should have called witnesses who could have testified about his background and upbringing, including the "personal hardships and severe deprivations" he suffered. (Appellant's brief at p. 44.) In Daniels v. State, 650 So.2d 544, 568-70 (Ala.Crim.App. 1994), cert. denied, 514 U.S. 1024, 115 S.Ct. 1375,131 L.Ed.2d 230 (1995), we stated the following regarding a claim that trial counsel had rendered ineffective assistance during the penalty phase of a capital murder trial:
 "In determining whether Haas was ineffective at original sentencing, . . . we recognize that the
 "`two-pronged Strickland analysis applies whether the ineffectiveness complained of occurred in the defendant's trial or in a subsequent adversarial sentencing proceeding. However, in a challenge to the imposition of a death sentence, the prejudice prong of the Strickland inquiry focuses on whether "the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death."'"
 "Stevens v. Zant, 968 F.2d 1076, 1081 (11th Cir. 1992) (citation omitted), cert. denied, 507 U.S. 929, 113 S.Ct. 1306, 122 L.Ed.2d 695 (1993). We also recognize that
 "`[w]hile "[i]t should be beyond cavil that an attorney who fails altogether to make any preparations for the penalty phase of a capital murder trial deprives his client of reasonably effective assistance of counsel by any objective standard of reasonableness," see Blake v. Kemp, 758 F.2d 523, 533 (11th Cir. 1985), it is unclear how detailed an investigation is necessary to provide a defendant with the effective assistance of counsel. Strickland only requires that counsel's actions fall *Page 116 
within the wide spectrum of what can be considered reasonable assistance of counsel.'
 "White v. Singletary, 972 F.2d 1218, 1224 (11th Cir. 1992). The principles regarding an attorney's duty to conduct an investigation into mitigating evidence have been summarized as follows:
 "`An attorney has a duty to conduct a reasonable investigation, including an investigation of the defendant's background, for possible mitigating evidence. Thompson v. Wainwright, 787 F.2d 1447, 1451 (11th Cir. 1986). First, it must be determined whether a reasonable investigation should have uncovered such mitigating evidence. If so, then a determination must be made whether the failure to put this evidence before the jury was a tactical choice by trial counsel. If so, such a choice must be given a strong presumption of correctness, and the inquiry is generally at an end. Funchess v. Wainwright, 772 F.2d 683, 689-90
(11th Cir. 1985). If, however, the failure to present the mitigating evidence was an oversight, and not a tactical decision, then a harmlessness review must be made to determine if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Thus, it must be determined that defendant suffered actual prejudice due to the ineffectiveness of his trial counsel before relief will be granted.'
"Middleton v. Dugger, 849 F.2d 491, 493 (11th Cir. 1988).
 "Applying the foregoing principles to the issue of whether Haas provided effective assistance of counsel at original sentencing, we conclude that the appellant's claim is without merit. Although the defense called only one witness at the sentencing hearing, that witness was Mrs. Hebert, the appellant's mother, who pleaded for the appellant's life. Mrs. Hebert had retained Haas, conferred with him at length, paid all his trial fees, and, by the time of sentencing, had exhausted her funds. The circuit court's sentencing order stated that `it is apparent to the court that [Mrs. Hebert] was devoted to [the appellant].'
 "Since Haas had spoken with Mrs. Hebert about the appellant and had observed by her words and actions that she appeared to be `devoted' to the appellant, we cannot fault Haas for failing to discover the appellant's `traumatic' childhood, in which, according to later testimony by Dr. Herlihy, Mrs. Hebert's `emotional rejection' of her son played a large part. Compare Bertolotti v. Dugger, 883 F.2d 1503, 1520 (11th Cir. 1989) (defense counsel held to have provided effective assistance on claim that counsel overlooked or failed to investigate evidence of defendant's traumatic childhood, where counsel interviewed defendant's parents), cert. denied, 497 U.S. 1031, 110 S.Ct. 3296, 111 L.Ed.2d 804 (1990). See also Beets v. Collins, 986 F.2d 1478, 1488-89 (5th Cir. 1993) (although counsel did not `conduct a thorough investigation of [the defendant's] medical, mental, and psychological history,' which would have revealed that the defendant `was raised in abject poverty, experienced a debilitating hearing loss, was afflicted with learning disabilities, had received head injuries as a child, and suffers from battered woman syndrome,' the court observed that the defendant never gave her attorney `any hint that she had been abused by previous husbands or boyfriends. Neither [the defendant] nor any other member of her family ever conveyed to [the attorney] any information giving him reason to believe that she had a history of *Page 117 
being physically abused.'), rehearing granted, 998 F.2d 253
(5th Cir. 1993); Cantu v. Collins, 967 F.2d 1006, 1016
(5th Cir. 1992) (despite fact that counsel failed to present evidence of defendant's `low IQ, emotional immaturity, troubled youth, trauma as a result of his parents' divorce, and appearance of neglect,' court found that counsel had `thoroughly investigated these claims, consulting with his client as well as [client's] father and brother for possible mitigating evidence,' and the claims were not supported in fact), cert. denied, 509 U.S. 926, 113 S.Ct. 3045, 125 L.Ed.2d 730
(1993); Wilkerson v. Collins, 950 F.2d 1054, 1064-65 (5th Cir. 1992) (although attorney failed to discover or develop mitigating evidence that defendant had a `deprived family background,' and psychological and mental `limitations,' the court observed that `trial counsel interviewed [the defendant], his mother, and other relatives. Neither [the defendant] nor his relatives were able to supply the names of potential defense witnesses. Investigation did not reveal reason to suspect that [the defendant's] mental capacity was in any fashion impaired.'), cert. denied, 509 U.S. 921, 113 S.Ct. 3035, 125 L.Ed.2d 722 (1993); Thompson v. State, 581 So.2d 1216, 1238 (Ala.Cr.App. 1991) (upholding circuit court's finding that counsel, who presented only the testimony of defendant's mother at sentencing, was not ineffective for failing to present evidence of the defendant's violent family background, addiction and substance abuse), cert. denied, 502 U.S. 1030, 112 S.Ct. 868, 116 L.Ed.2d 774 (1992).
 "We hold that Haas was not ineffective at the original sentencing proceeding."
650 So.2d at 568-70 (emphasis omitted). Also, counsel does not necessarily render ineffective assistance simply because he does not present all possible mitigating evidence. "Although the failure to conduct a reasonable investigation of possible mitigating evidence may constitute ineffective assistance of counsel, `counsel may make a reasonable strategic judgment to present less than all possible available evidence in mitigation.'Stanley v. Zant, 697 F.2d 955, 965 (11th Cir. 1983),467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984)." Lundy v. State,568 So.2d 399, 403 (Ala.Crim.App. 1990).
 "When a decision to not put on certain mitigating evidence is based on a `strategic choice,' courts have always found no ineffective performance. Moore v. Maggio, 740 F.2d 308 (5th Cir. 1984), cert. denied, 472 U.S. 1032, 105 S.Ct. 3514, 87 L.Ed.2d 643 (1985); Lowenfield v. Phelps, 817 F.2d 285 (5th Cir. 1987), aff'd, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). No two lawyers would try a case exactly the same way.
 "We cannot say that counsel's performance is deficient because he failed to call more witnesses at the sentencing phase. `The decision not to call a particular witness is usually a tactical decision not constituting ineffective assistance of counsel.' Oliver v. State, 435 So.2d 207, 208
(Ala.Cr.App. 1983). At the hearing on the Rule 32 petition, the appellant's mother, two of his aunts, an uncle, and several old friends offered character testimony. Most of these witnesses did not have contact with the appellant near the time of the murder. There has never been a case where additional witnesses could not have been called. The appellant presented relatives and personal friends who, upon interview, were found to testify on his behalf. We refuse to set a standard that a court may be reversed because it did not hear unoffered testimony from still more friends and relatives. We also refuse to say *Page 118 
that a member of the bar is guilty of ineffectiveness for not calling every witness and friend who was willing to testify. To hold otherwise would clog an already overburdened system with repetitious testimony. The appellant has failed to satisfy either prong of the Strickland test."
State v. Tarver, 629 So.2d 14, 21 (Ala.Crim.App. 1993), cert. denied, 511 U.S. 1078, 114 S.Ct. 1664, 128 L.Ed.2d 380 (1994).
 "With regard to McKinnon's representation of Morrison at the punishment-fixing and sentencing phases of his trial, we find that the observations of the court in Clark v. Dugger, 834 F.2d 1561, 1568 (11th Cir. 1987), are appropriate:
 "`The failure to conduct a reasonable investigation of possible mitigating evidence may render counsel's assistance ineffective. Lightbourne v. Dugger, 829 F.2d 1012, 1025 (11th Cir. 1987); Thompson v. Wainwright, 787 F.2d 1447, 1450 (11th Cir. 1986), cert. denied, 481 U.S. 1042, 107 S.Ct. 1986, 95 L.Ed.2d 825 (1987). "After a sufficient investigation, however, `counsel may make a reasonable strategic judgment to present less than all possible available evidence in mitigation.'" Lightbourne, 829 F.2d at 1025 (quoting Mitchell v. Kemp, 762 F.2d 886, 889 (11th Cir. 1985), cert. denied, 483 U.S. 1026, 107 S.Ct. 3248, 97 L.Ed.2d 774 (1987) and Stanley v. Zant, 697 F.2d 955, 965 (11th Cir. 1983), cert. denied, sub nom. [Stanley v. Kemp,] 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984)). In essence, "[c]ounsel has no absolute duty to present mitigating character evidence." Id. (quoting Mitchell, 762 F.2d at 889). [Counsel] conducted a reasonable investigation to determine the availability of appropriate mitigating evidence and simply made a tactical decision to not present some of the available mitigating evidence. In this circuit, [counsel's] decision is "accorded a strong presumption of correctness which is `virtually unchallengeable.'" Id. (quoting Sinclair v. Wainwright, 814 F.2d 1516, 1519 (11th Cir. 1987) and Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984)). Given the alternatives . . . faced, [counsel's] handling of the penalty phase was not unreasonable. See Stanley, 697 F.2d at 958-70. We therefore conclude that there has been no showing of ineffective assistance nor prejudice to defendant in the way trial counsel prepared and tried [this] case.'"
Morrison v. State, 551 So.2d 435, 445 (Ala.Crim.App. 1989), cert. denied, 495 U.S. 911, 110 S.Ct. 1938, 109 L.Ed.2d 301
(1990) (alterations in original).
 "We find that the holding of Fleming v. Kemp, 748 F.2d 1435, 1452 (11th Cir. 1984), cert. denied, 475 U.S. 1058, 106 S.Ct. 1286, 89 L.Ed.2d 593 (1986), is applicable here:
 "`In summary, we are not persuaded by petitioner's argument that . . . [defense counsel] rendered him ineffective assistance of counsel. Petitioner's examples of professional dereliction dissolve away under close scrutiny, leaving at best a handful of colorable claims. A defense attorney is not ineffective solely because his client is sentenced to death. "Intrusive post-trial inquiry into attorney performance," such as that which has been required in this case, may "dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client." Strickland *Page 119 v. Washington, [466] U.S. at [690], 104 S.Ct. at 2066. Counsel's performance, here, ensured a fundamentally "fair trial" which "produced a just result." Id. at [686], 104 S.Ct. at 2064. There is no reason to set aside petitioner's conviction or his penalty on account of the representation he received.'"
Bell v. State, 518 So.2d 840, 847 (Ala.Crim.App. 1987), cert. denied, 486 U.S. 1036, 108 S.Ct. 2024, 100 L.Ed.2d 611 (1988). Finally, the appellant bears a heavy burden of proof when he claims that his counsel rendered ineffective assistance.
 "Further, we cannot say that the appellant suffered any prejudice based on counsel's performance because he failed to demonstrate any evidence of mitigation. Prejudice cannot merely be alleged; it must be affirmatively proved. Duren v. State, 590 So.2d 360 (Ala.Crim.App. 1990). Thus, the appellant has not shown that there is a reasonable probability that the outcome of his trial would have been different, but for trial counsel's performance. Baldwin, Thompson v. State, 581 So.2d 1216 (Ala.Crim.App. 1991), cert. denied, 502 U.S. 1030, 112 S.Ct. 868, 116 L.Ed.2d 774 (1992)."
Brooks v. State, 695 So.2d 176, 182 (Ala.Crim.App. 1996), aff'd, 695 So.2d 184 (Ala.), cert. denied, 522 U.S. 893,118 S.Ct. 233, 139 L.Ed.2d 164 (1997).
The record from the appellant's direct appeal shows that Dr. Raymond O. Sumrall testified before the jury during the penalty-phase proceedings. Dr. Sumrall, who was a professor at the School of Social Work at the University of Alabama and an associate professor with the University's Department of Criminal Justice, testified that he spent ten hours interviewing the appellant and that he had reviewed the appellant's background. He testified that the appellant's mother deserted him when he was very young; that he lived with his maternal grandmother; that, at age seven, when his maternal grandmother died, he moved in with his aunt; that he did not have a stable home environment; that he had not had any relationships with significant adult and stable women in his life; that he did not have a relationship with his father because his father left when the appellant was two years old; that, from the ages of nine to twelve, "he was pretty much a street kid who came and went without very much supervision from anybody" (Trial R. 1026); that he could not discipline himself; and that he had been extensively involved in the use of drugs and other substances since he was sixteen. Dr. Sumrall also testified that he had not observed any pattern of behavior in the appellant that was assaultive or violent and that committing murder was not consistent with the appellant's prior behavior, which involved only property offenses.
There was also testimony that the appellant had been evaluated at the Taylor Hardin Secure Medical Facility ("Taylor Hardin") by several doctors. Using that evaluation, Dr. Bernard E. Bryant, a psychiatrist, testified that the appellant had an antisocial personality and that he showed remorse about the offense.
Finally, the trial court held a separate bench sentencing hearing after the jury had returned its recommendation and after the presentence investigation had been completed. At this hearing, Reverend Charles Hunter testified that he had known the appellant since the appellant was a child and that he was not a violent person. The appellant also testified at the hearing that he was the type of person who liked to help people and "look out" for people. He further testified that he did *Page 120 
not have a history of violence and that he had never previously been convicted of a violent crime.
When addressing this claim, the circuit court made the following findings:
 "In his Post-Hearing Brief, Williams contends that testimony could have been adduced by defense counsel through Herbert Echols, Debra Grenshaw (spelled `Grinshaw' in the transcript of the evidentiary hearing), Jesse Hill [the appellant's stepfather] and/or Laura Williams to paint a picture of Luther Williams' deprived and impoverished childhood. There is some question as to Mr. Echols' accessibility and availability during the period of [trial counsel's] representation of Williams, inasmuch as Mr. Echols testified at the evidentiary hearing that he was living in Detroit from 1988 to 1990, and even his brother did not really know how to find him, because at one point in time he was homeless. (EH 145). Nonetheless, the testimony elicited from him and from the other aforementioned witnesses at the evidentiary hearing related to information essentially cumulative to that provided the jury by Dr. Sumrall. Williams argues in his Post-Hearing Brief that those witnesses could have acquainted the jury with the fact that his mother had deserted him and his siblings when he was still very young; that his father likewise had abandoned him; that he thereafter was raised by Laura Wilkins; and that he was often locked out of her house and forced to fend for himself. In his testimony at the evidentiary hearing, Luther Williams explained that when Ms. Wilkins would lock him out, for two to three days at a time, he would live `over [at] other friends' houses.' (EH 189-90). The contention is made in the Post-Hearing Brief that testimony could have been presented through Mr. Echols that Luther, along with Mr. Echols, was regularly whipped by Mr. Hill with switches, belts, and extension cords. Williams himself testified at the evidentiary hearing that he had a good relationship with Mr. Hill when he didn't whip him, and Luther still loved him. (EH 190). Dr. Sumrall put before the jury that Luther Williams' `mother deserted him at a very young age' and that he lived with a maternal grandmother for a while but that she died when he was seven, leaving Luther with an aunt who apparently adopted him when he was about nine; that `from his birth to age nine he had no stable environment'; that he had `no relationship with significant adult and stable women in his life'; that he had no relationship with a significant father figure in his life'; that his father had left him when he was only two years old; and that from about nine to twelve years of age `he was pretty much a street kid who came and went without very much supervision from anybody.' (R. 1025-26). When Williams' present counsel called Jesse Hill to the stand at the evidentiary hearing, he was not asked any questions concerning any alleged mistreatment of Luther by him. Further, Mr. Hill was asked virtually no questions at that hearing concerning Luther Williams' impoverished or deprived background, other than concerning the undisputed fact that Luther's mother and father were not involved in his life after his early years. (EH 163). With respect to the argument made in the post-hearing brief that use of a psychologist, such as Dr. Barbara Tarkin, could have paved the way for presentation of significant non-statutory mitigation evidence, the testimony she presented was not in disagreement with that of Dr. Sumrall or the State's penalty-phase expert, Dr. Bernard E. Bryant. The contention is *Page 121 
made in the post-hearing brief that `Dr. Tarkin, or another qualified psychologist, could have offered an opinion, consistent with that of Taylor Hardin's psychiatrist, that Mr. Williams' condition was a condition that developed in all probability by virtue of his very early childhood deprivation.' (PHB, p. 17). Dr. Bryant, who testified that he was employed at Taylor Hardin from April 1 of 1986 through August 31 of 1989, opined that Williams had an antisocial personality (R. 108). He explained that it is a `characterological or personality' disorder developed during a person's formative years, of ages `2, 3, 6, 7, 8 years old,' whereby `the person has ended up with this personality.' (R. 1082). Dr. Bryant acknowledged during cross-examination by [trial counsel] that an unstable family could, if there were not a proper male or female role model, contribute to a person having antisocial characteristics. (R. 1097). He further acknowledged that `substance abuse does exacerbate' (R. 1098).
 "The court does not find that the failure to utilize the witnesses now suggested by Williams constituted ineffective assistance of counsel. . . . The pertinent information was presented to the jury through Dr. Sumrall, without the risk being run of possibly harmful information being elicited from those witnesses on cross-examination. Furthermore, even if [trial counsel's] preparation and presentation were deficient in this regard, Williams has failed to show the requisite second prong of prejudice. He has not met the Strickland
test of showing a reasonable probability that, absent the error in question, the sentencer would have concluded that the balance of aggravating and mitigating circumstances did not warrant death; he has not shown a probability sufficient to undermine confidence in the outcome."
(C.R. 684-87.) We agree with the circuit court's findings and adopt them as part of this opinion. In addition, we note that the trial court found, as nonstatutory mitigating circumstances, that the appellant had an antisocial personality, that he did not have a significant prior history of assaultive or violent conduct, that he had not had a stable family environment during his formative years, and that he had extensively abused alcohol and drugs since he was about 16 years old. (Trial R. 1433.) For the above-stated reasons, the appellant has not shown that counsel rendered ineffective assistance in the preparation and presentation of mitigating evidence. See Strickland, supra.
 B.
Second, the appellant contends that his attorneys rendered ineffective assistance because they did not seek the assistance of a psychologist to help present mitigating evidence. The circuit court made the following findings regarding this claim:
 "[Trial counsel's] utilization of Raymond O. Sumrall was a defensible strategic choice. Dr. Sumrall spent nine to ten hours interviewing Williams, exclusive of any other case investigation/preparation (R. 1042), and he brought to his assignment, and detailed for the jury, a diverse and extensive background of both academic and professional credentials and a wide variety of work experiences (R. 1006-19). At the time of this testimony, he was a professor at the School of Social Work and was also an associate professor with the Department of Criminal Justice; he taught courses in criminal justice, crime, and delinquency; he has a Master's degree in social work with an emphasis in psychiatric social work; a Master's of Divinity degree with an emphasis on pastoral counseling; *Page 122 
and a Ph.D. He had worked as a chief probation officer, a parole officer, and a consultant to the Office of the Chief of Police of Birmingham. Such a background might well be expected to more favorably impress a jury than the `ivory tower' perspective of a psychologist or a psychiatrist."
(C.R. 683-84.) The circuit court also found:
 "The court finds that [trial counsel's] decision to use the services of Dr. Sumrall, rather than a psychologist, was a tactical decision within the wide range of professionally competent assistance. The court has carefully reviewed and reconsidered the testimony of the clinical psychologist who Williams put forward at the evidentiary hearing to develop support for this ground, Dr. Barbara Tarkin. She was offered as an expert in clinical psychology. (EH 285). From her review of records relating to Mr. Williams, she noted that a diagnosis of antisocial behavior had been put forth as a diagnosis, and, although she had not been asked to develop a psychological diagnosis of Mr. Williams, she included among the `working hypotheses in my head' a diagnosis that `Mr. Williams engaged in significant antisocial behaviors.' . . . Dr. Tarkin's testimony was not inconsistent with the opinions expressed by Dr. Sumrall and Dr. Karl Kirkland. The testimony of Dr. Tarkin does not support the proposition that the use of the services of a psychologist by trial counsel, `who could have examined [Williams] and prepared a report on his mental condition' would have developed any beneficial information. Stated another way, there is no showing of prejudice, as required by Strickland."
(C.R. 673-74.) We agree with the circuit court's findings and adopt them as part of this opinion. Accordingly, the appellant has not shown that his attorneys rendered ineffective assistance in this regard. See Strickland, supra.
 C.
Third, the appellant contends that his attorneys rendered ineffective assistance because they did not object to the testimony of the State's psychiatrist, Dr. Bryant, concerning his future dangerousness. Initially, we note that this issue is not properly before this court because the appellant did not raise it in his original or amended petition and did not present any evidence in support of it at the evidentiary hearing. SeeMorrison v. State, 551 So.2d 435 (Ala.Crim.App. 1989), cert. denied, 495 U.S. 911, 110 S.Ct. 1938, 109 L.Ed.2d 301 (1990).
Moreover, on direct appeal, we concluded that the trial court properly allowed Dr. Bryant to testify during the penalty phase of the trial and that the admission of his testimony did not violate the principles stated in Estelle v. Smith, 451 U.S. 454,101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). See Williams, 601 So.2d at 1078-79.
Finally, when considering this issue, the circuit court found as follows:
 "Williams' antisocial personality, testified to only by Dr. Bryant, was one of the few mitigating circumstances found by the trial court. (R. 1433). Williams' Rule 32 counsel did not question his trial counsel at the evidentiary hearing concerning any strategic reasons he might have had for forgoing any objection to Dr. Bryant's testimony. Accordingly, even if trial counsel might have had available to him an objection to Dr. Bryant's testimony under Estelle v. Smith, 451 U.S. 454 (1981), he may well have made the strategic decision to forgo the same in consideration of the opportunity to elicit from Dr. Bryant penalty phase *Page 123 
information helpful to the Defendant. By not opposing Dr. Bryant's opinion that the Defendant suffered from an antisocial personality, . . . defense counsel set the stage for his cross-examination linking such a disorder to a lack of family nurturing and an unstable family. (R. 1081, 1097). During that cross-examination Dr. Bryant testified that an unstable family without a male or female role model could result in the problem. (R. 1097). Also Dr. Bryant testified on cross-examination that substance abuse would exacerbate the personality disorder. (R. 1098). Additionally, Dr. Bryant testified that the condition would impose upon the person experiencing it a `locked in' way of acting. (R. 1098). Dr. Bryant testified that in his interview with Luther Williams, the basic attributes he observed in him were `that he appeared to be somewhat remorseful [and] he was crying while he was talking about the situation.' (R. 1103). Further, Dr. Bryant testified concerning the details of the Defendant's exculpatory statement given to him during the interview, and another exculpatory statement he made to Dr. Omar Mohabbat, a staff psychiatrist at Taylor Hardin Secure Medical Facility. (R. 1085-86; 1089). Because the Defendant did not testify at either the guilt phase or the penalty phase (a strategic decision with which Rule 32 counsel takes no exception), it was only through Dr. Bryant's testimony that the Defendant's denials of liability were presented to the jury.
 "As to this assertion of ineffective assistance of counsel, the Defendant has proven neither deficient performance nor resulting prejudice."
(C.R. 697-98.) We agree with the circuit court's findings and adopt them as part of this opinion. Accordingly, the appellant has not shown that his attorneys rendered ineffective assistance in this regard. See Strickland, supra.
 III.
The appellant also argues that his attorneys rendered ineffective assistance during the guilt phase of his trial.
 A.
First, the appellant contends that his attorneys rendered ineffective assistance because they allegedly did not properly investigate the case and interview potential witnesses. The circuit court made the following findings concerning this contention:
 "[Trial counsel] principally relied on Dr. Formby, who had been engaged by his predecessor counsel, to conduct the case investigation and witness interviews. Dr. Formby was well qualified for that role by virtue of many background attributes, as detailed by his testimony at the evidentiary hearing and his `vitae' introduced as State's Exhibit 6 to the same. During the time of his engagement on the case, he was also a co-principal with Dr. Sumrall in the forensic services firm of Veritas, Inc. . . . Dr. Formby testified that he `probably put in easily 200 hours' on the investigation, having commenced it in the service of [trial counsel's] predecessor attorneys and therefore having been on the case `essentially longer than anybody else.' (EH 398). Dr. Formby `spent a good bit of time talking with Luther [Williams]' and spent a good bit of time talking to potential witnesses in the Smithfield Apartments area of Birmingham. (EH 378). He visited with some of Williams' family members in the Titusville projects and Debra Bush in the Avondale projects. (EH 378). He went to see Margie Bush, the grandmother of Debra Bush and she admitted him to her apartment where Luther had been apprehended, *Page 124 
showing him the bedroom. Dr. Formby spent many hours `just walking around that area talking to people.' (EH 380). For various reasons adequately explained in his testimony, he did not keep detailed records of everyone he interviewed or of all the time he devoted to the case. He interviewed Priscilla Jones and DeWayne Pierce. (EH 382-83). A lot of his investigation and interviewing was devoted to trying to develop connections between Williams' co-defendants and the property stolen from Mr. Kirk, and other evidence against the co-defendants. (EH 381, 384). He went to the Titusville projects and spent approximately two hours interviewing Williams' grandmother and one of his sisters. (EH 384). . . . As the District Attorney's office provided the defense with more and more discovery materials, Dr. Formby `would go back to Luther and talk to him again to see if he could push me or give me leads in other directions.' He talked to Williams a lot. (EH 388). Dr. Formby went to the crime scene on a couple of occasions. (EH 388-89). He attempted to follow the route that Williams and his two co-defendants had traversed at different points during the incidents in question. (EH 389). He and [trial counsel] routinely `would have meetings probably twice a week up until the last few weeks before trial, and then we met virtually every day.' (EH 389-90). Dr. Formby would brief [trial counsel] on all that he had developed, and [trial counsel] would provide guidance in terms of things that he felt were important that Dr. Formby needed to follow up on. (EH 390). . . .
 "For his part, [trial counsel] personally tried to locate witnesses who could corroborate Mr. Williams' claim that he was incapacitated by intoxication on the night of the murder. (EH 79-80)."
(C.R. 658-61.)
The appellant also contends that his attorneys rendered ineffective assistance because they did not interview and present witnesses who he alleges could have rebutted most of the circumstantial evidence presented in the case. Specifically, he asserts that there were witnesses who could have placed his co-defendant in the victim's truck on the day of the murder and who could have impeached Priscilla Jones, the appellant's sister, who testified that the appellant told her that he had killed a white man. In regard to this issue, the circuit court made the following findings:
 "Williams argues in his Post-Hearing Brief that `[t]o counter the damaging evidence that Mr. Williams was seen driving Mr. Kirk's truck, trial counsel could have offered testimony through Laura Williams or Sandra King that Albert Carmichael had been seen driving the red truck, that he smelled of gasoline and that Mr. Carmichael had white man's cigarettes on him Saturday evening, just hours after Mr. Kirk was murdered.' (PHB, p. 12). Ms. Williams and Ms. King testified at the evidentiary hearing that they were at Ms. King's apartment house on a Saturday night when they observed Albert Carmichael in a red truck parked in the parking lot by Priscilla Jones' house. As far as the date on which that occurred, Ms. Williams was only asked if she remembered being at Ms. Kings' `a few days before the time that Luther was arrested for the murder,' and she identified it as a Saturday night, and Ms. King was asked if she could remember being at home with Laura visiting her `January 23, I believe a Saturday night, Saturday afternoon or Saturday night. I may be wrong on the day, but I think that is the *Page 125 
date, January 23. Do you remember being home on that date?', to which she answered in the affirmative. (EH 181). Both testified that Carmichael came into King's apartment and they were then able to notice the smell of gasoline on him. Ms. Williams testified that he `had some cigarettes that he didn't smoke,' which were `a white man's kind of cigarettes.' Asked what brand they were, she testified that they were `Merit or something like that. I can't really remember what kind they were,' whereas Carmichael usually smoked Kools. Ms. King testified that Carmichael usually smoked `Kools or either Newport 100s' and that the cigarettes he had with him on the occasion in question were not `the same kind' but she could not state what brand they were. (EH 175-76, 183-84).
". . . .
 "Considering all of the interviewing of Williams and his family members conducted by Dr. Formby, and considering all of the evidence showing the involvement of Albert Carmichael and Trosky Gregory in various critical events of the weekend in question, the court does not find that Williams has carried his burden of proving that a failure to use Laura Williams or Sandra King as defense witnesses constituted ineffective assistance of counsel; or that the omission of their testimony prejudiced the defense in the way required by the Strickland test. Under Strickland, it is not enough to show that trial errors `had some conceivable effect on the outcome of the proceeding,' rather the defendant `must show that there is a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding would have been different.' (Strickland, 466 U.S. at 693-94) (Emphasis added). That Albert Carmichael was observed in the red camper truck at the apartment complex during the night of Saturday, January 23rd, after Luther Williams had been observed to have been involved with it at earlier points in time that day, would not have altered the impact or implication of any of the State's critical evidence. There is no indication that either Laura Williams or Sandra King ever told anyone before Williams' trial that they had seen Albert Carmichael in the red truck. . . .
 "Williams asserts in his post-hearing brief that defense counsel should have countered the damaging testimony of Priscilla Jones by eliciting testimony from her father, Jesse Hill, that she was `a big liar.' Under Rule 608(a) of the Alabama Rules of Evidence . . ., a witness may impeach the credibility of a witness who has testified by offering the second witness's opinion regarding the first witness's untruthfulness. The Alabama Rules of Evidence did not become effective until January 1, 1996, however, and the law of evidence existing at the time of Williams' trial restricted the testimony of an impeaching witness to the limited fact of the other witness' general reputation in the community for untruthfulness. Before a witness can testify concerning the reputation in the community for the truthfulness or untruthfulness of another witness, a predicate must be laid establishing that the impeaching witness actually has knowledge of the other witness's reputation for truthfulness or untruthfulness in the first witness's community. That was the evidentiary point addressed by the court in its comments to counsel during Mr. Hill's testimony. (EH 164-66). Although the question put to Mr. Hill was rephrased so as to properly inquire as to `reputation,' Mr. Hill persisted in expressing the matter in terms of his own personal knowledge of her lack of veracity. *Page 126 
His testimony as ultimately offered related to his own personal assessment or opinion of her history of untruthfulness, rather than relating it to her reputation in the community. He expressed his opinion that Priscilla `had come down here and told the people out here a bunch of — to me, it is a bunch of fairy tales.' (EH 166). Mr. Hill conceded, however, that he [had] no knowledge about the evidence in the case and that it was his testimony that Priscilla was telling the people in Tuscaloosa `fairy tales' because `that is my daughter, and I know what she is capable of doing. My daughter would do anything, say anything to anybody.' (EH 167). When asked how, if he did not know anything about the facts of the case, he could attack the credibility of her testimony, he answered that Priscilla was `a big liar,' and that she `never tells the truth about a lot of things.' (EH 168). Accordingly, as the record stands, there is no affirmative showing that Mr. Hill could have offered testimony that would meet the foundational requirement of showing that it related to Priscilla Jones' reputation for truthfulness/untruthfulness in her community in 1989. . . . [Trial counsel] impeached Priscilla Jones with respect to the inconsistencies between her trial testimony and her preliminary hearing testimony, and her testimony on several important points was corroborated by that of Teresa Ann Evans. One of the critical features of Priscilla Jones' testimony was that Luther Williams told her, on the occasion that he came to her apartment building the morning of Saturday, January 23rd, in the `red and white camper truck,' that he had killed a white man (R. 479), that `I just killed a white man.' (R. 502). She did not believe him at the time. (R. 480, 502). Immediately prior to making that statement, he had hugged her and apologized to her for the altercation between them the preceding night. (R. 476, 502). He had the odor of gas on him. (R. 480). When she returned to her apartment, he followed her and showed her `a pistol and some bullets,' with the pistol having `a clear handle,' meaning that it was `white.' (R. 480). As the only other participant to that conversation, Williams was the only person who could have contradicted Jones' testimony about it, but he did not testify and the trial strategy decision in that regard is not challenged in this proceeding. The court does not consider the fact that Mr. Hill might have testified that he had knowledge of his daughter's reputation for truthfulness, and that her reputation was bad in that regard and she had a reputation for untruthfulness, would have been of such import as to impeach her as a witness to the extent that the outcome of the trial would have been different."
(C.R. 662-72.)
We agree with the circuit court's findings as to these claims and adopt them as part of this opinion. Because the appellant has not established that his attorneys rendered ineffective assistance in these instances, he is not entitled to relief on these claims.See Strickland, supra.
 B.
Second, the appellant contends that his attorneys rendered ineffective assistance because they allegedly did not adequately interview him before trial. When addressing this contention, the circuit court found as follows:
 "Williams' entire argument . . . consists of the statement that `Trial Counsel did not believe interviewing to be necessary (Tr. 60). Yet, due to his failure to conduct adequate interviews, he compounded *Page 127 
the errors of his investigators who failed to conduct a basic investigation, both on guilt as well as mitigation.' (PHB, p. 37). This terse, general statement does not satisfy the specificity requirements of Rule 32. With respect to the merits of the assertion, [trial counsel] utilized the investigative services of Dr. William A. Formby, who had already been retained to render investigative services in the case by [trial counsel's] predecessor counsel, and he also engaged the services of Dr. Raymond O. Sumrall. The court finds from their respective testimonies at the evidentiary hearing . . ., Dr. Sumrall's testimony at the November 1989 trial, and [trial counsel's] testimony at the evidentiary hearing that adequate interviews were conducted with Williams. Additionally, with respect to the second `prong' of the Strickland test, Williams has made no showing of how any deficiency in the interviewing of him prejudiced his defense."
(C.R. 651-52.) We agree with the circuit court's findings and adopt them as part of this opinion. Dr. Sumrall testified that he met with the appellant for approximately eight to ten hours before trial. We further note that, during the evidentiary hearing, Dr. Formby testified that he met with the appellant "a lot" of times. Also, at the evidentiary hearing, the appellant stated, "So many people came in and talked to me, I don't know one from the other." (R. 211.) For these reasons, the appellant has not established that counsel rendered ineffective assistance in this regard. Therefore, he is not entitled to relief on this claim.
 C.
Third, the appellant contends that his attorneys rendered ineffective assistance because they did not talk to his former attorneys. In his amended petition, his entire argument consisted of the allegation that "[t]rial counsel never talked with [former counsel] who was Mr. Williams' counsel at the preliminary hearing and at the motion hearing on March 9, 1989." (C.R. 156.) This contention was not sufficient to satisfy the specificity requirements of Rule 32.6(b), Ala.R.Crim.P., or the pleading requirements of Rule 32.3, Ala.R.Crim.P. Accordingly, the appellant is not entitled to relief on this claim.
 D.
Fourth, the appellant contends that his attorneys rendered ineffective assistance because they allegedly did not present sufficient evidence to support his motion to suppress the murder weapon, which he contends police officers seized during an illegal search of his room. However, he did not present this contention in his original or amended petition. An appellant may not raise on appeal grounds he did not raise in his Rule 32 petition. Therefore, this issue is not properly before this court. SeeMorrison, supra.
 E.
Fifth, the appellant contends that his attorneys rendered ineffective assistance because they allegedly did not examine the records furnished by the State and therefore did not discover that he had made a statement to an employee at Taylor Hardin to the effect that he had killed one white man and would kill another. He also argues that counsel should have objected to the admission of the statement on the ground that it was not relevant. In addressing these contentions, the circuit court made the following findings:
 "The thrust of Williams' treatment of this contention in his post-hearing brief is that [trial counsel] erred by not interposing *Page 128 
a relevancy objection to this testimony of Mr. Gaskin. . . .
 "Indisputably, [trial counsel] was surprised by Mr. Gaskin's testimony concerning the statement made in his presence by Williams, because neither Dr. Sumrall nor Dr. Formby had noted it or called it to his attention. Dr. Formby testified that he had gone through the records in question but `just simply didn't pick up on it.' (EH 414).
 "The Court of Criminal Appeals analyzed the content and context of the statement attributed to Williams by Gaskin in its opinion, although it did so in connection with responding to Williams' contention that the statement should have been excluded because he had not been read his Miranda rights prior to making the statement. Nonetheless, at the end of the entire opinion, after having addressed all issues which had been specifically raised, the court declared, `. . . We have searched the entire record for any error which may have adversely affected the appellant's substantial rights and have found none.' 601 So.2d at 1087. As previously noted, `[a] finding of no plain error is one factor to consider when assessing the performance of trial counsel.' Hallford v. State, 629 So.2d 6, 10 (Ala.Crim.App. 1992).
 "Does it constitute ineffective assistance of counsel to delegate various aspects of case investigation to an apparently qualified professional investigator, who then fails to note, or appreciate the significance of, a prejudicial entry in medical records under review? At least one court has so held. In Stubbs v. Thomas, 590 F. Supp. 94
(S.D. New York 1984), defense counsel asked the court-appointed investigator to look into some records. The investigator visited an incorrect address and, when the business at that address did not have the records, failed to pursue the issue. The Defendant was convicted of murder and the state trial judge subsequently found that the attorney could not be faulted for the investigator's deficient performance. However, in reconsidering the issue in the habeas proceeding before him, U.S. District Judge Lowe noted that the right to effective assistance of counsel encompassed the right to adequate investigation, and went on to observe:
 "`That right may not be defeated by delegating investigative services to someone other than counsel. Therefore, where an investigator is appointed, he has a duty to provide the defendant with reasonably competent investigative assistance. His failure to do so may constitute a violation of the defendant's right to effective assistance of counsel under the Sixth and Fourteenth Amendments.'
"590 F. Supp. 94, 100.
 "Nonetheless, Judge Lowe concluded that the investigator's misconduct did not satisfy the prejudice prong of Strickland because there was not a reasonable probability that, absent the error, the jury would have had a reasonable doubt concerning the defendant's guilt. Likewise, this court finds in this case that any deficiency in the records review, or investigation otherwise, by Dr. Formby, Dr. Sumrall, and/or [trial counsel] did not result in the requisite degree of prejudice. Unless a defendant satisfies both the deficient performance prong and the prejudice prong of Strickland, `it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.' Strickland, 466 U.S. at 687. . . . [T]he court finds that there is no reasonable probability that a relevancy objection would have been sustained, *Page 129 
nor that overruling it would have constituted reversible error. The testimony of Mr. Gaskin followed immediately after the testimony of Priscilla Jones. She had testified that when she encountered Williams at her apartment project the morning of Saturday, January 23, 1988, he had made the statement to her in the course of their conversation that he had killed a white man. (R. 479-80). When questioned further as to whether Mr. Williams had told her: `I just killed a white man,' she confirmed that as his statement to her. (R. 502). On the heels of that testimony, Mr. Gaskin testified that Williams had stated in the course of an argument with another patient at Taylor Hardin Secure Medical Facility, in Mr. Gaskin's presence and hearing, on December 12, 1988, `I have killed one white m_____ f_____; I'll kill another one.' (R. 515-17, 537-38). The patient with whom Williams was arguing was white and Mr. Gaskin is black. (R. 549). Mr. Gaskin recorded that statement in the `SOAP notes' portion of Mr. Williams' record at Taylor Hardin. (R. 539-43; State's Exhibit 3 at the evidentiary hearing.) Williams had been arrested during the early morning hours of January 25, 1988, and had been incarcerated at various locations at all times between then and the date of the statement overheard by Mr. Gaskin. Presumably there would have been no opportunity to kill undetected a white person, or any other person, during that time frame. Accordingly, the statement made by Williams in the hearing of Gaskin would have related to an event preceding January 25, 1988. Consequently, it is not `remote' to the January 23, 1988, incident, and statements that date to Priscilla Jones. The court finds the testimony was relevant. `The rule is stated to be that the acts, declarations and demeanor of an accused before or after the offense whether a part of the res gestae or not are admissible against him, but unless a part of the res gestae are not admissible for him.' Smoot v. State, 381 So.2d 668, 671 (Ala.Crim.App. 1980). In Oryang v. State, 642 So.2d 989 (Ala.Crim.App. 1994), the Defendant was convicted of attempted murder with respect to shootings that occurred in December 1991. A witness was allowed to testify that, `sometime in 1990,' the Defendant had made the statement, while drinking, that one day he was going to kill someone `for the hell of it.' After concluding that the statement was admissible for one purpose, the court opined, `further, the testimony concerning the appellant's statement that one day he was going to kill someone "for the hell of it," was relevant and not too remote.' (642 So.2d at 997) (Emphasis supplied.) The court went on to say that `Moreover,' the statement was admissible under the rule quoted above from Smoot. (642 So.2d at 997).
 "Accordingly, the court concludes that the statement was not objectionable on grounds of relevancy, and also concludes that the Court of Criminal Appeals would have noted it to have been thus objectionable, under the `search the record for error' rule of review attending capital murder appeals, were that not so."
(C.R. 679-83.) We agree with the circuit court's findings and adopt them as part of this opinion. Accordingly, the appellant is not entitled to relief on these claims.
 F.
Sixth, the appellant contends that his attorneys rendered ineffective assistance because they did not request funds to hire forensics experts. His entire argument in his petition consisted of the following *Page 130 
statement: "Trial counsel failed to use the services of a forensic expert. Therefore, the defendant did not have the benefit of a skilled forensic investigator who could analyze the forensic evidence presented by the state." (C.R. 157.) In addition, at the evidentiary hearing, the appellant did not present any evidence in support of this claim. Therefore, the circuit court properly found that the appellant had not satisfied the specificity requirements of Rule 32.6(b), Ala.R.Crim.P. (C.R. 673.) In addition, the appellant did not satisfy the pleading requirements of Rule 32.3, Ala.R.Crim.P. Accordingly, he is not entitled to relief on this claim.
 G.
Seventh, the appellant contends that his attorneys rendered ineffective assistance because they allegedly did not present an adequate theory of defense. However, he did not present this claim in his original or amended petition. Therefore, it is not properly before this court. See Morrison, supra.
 H.
Eighth, the appellant contends that his attorneys rendered ineffective assistance because they allegedly did not adequately question the veniremembers about whether they would automatically vote to impose the death penalty. As the circuit court noted:
 "Williams has offered no proof in support of this assertion of ineffective assistance of counsel. [Defense counsel] did include within his voir [dire] of the venire the following question: `Are there any of you, ladies and gentlemen, that feel that the death penalty should be given for any conviction of murder?' (R. 259). No venireperson responded. . . . There is no showing that Williams was prejudiced by [defense counsel's] strategic decision as to how to conduct the voir dire. "
(C.R. 678.) We agree with the circuit court's findings and adopt them as part of this opinion. Because the appellant has not satisfied the pleading or specificity requirements of Rules 32.3 and 32.6(b), Ala.R.Crim.P., or his burden of proof underStrickland, he is not entitled to relief on this claim.
 I.
Ninth, the appellant contends that his attorneys rendered ineffective assistance because they did not impeach Priscilla Jones. Specifically, he contends that counsel should have impeached her with the testimony of Jesse Hill concerning her reputation for untruthfulness and should have impeached her by presenting evidence that she allegedly allowed her apartment to be used to fence stolen items. However, he did not specifically present these claims to the circuit court in his original or amended petition. Rather, in his amended petition, his entire argument in this regard is that "[t]rial counsel did not follow-up with cross-examination of inconsistencies in Priscilla Jones' story." (C.R. 156.) This statement was not sufficient to satisfy the pleading or specificity requirements of Rules 32.3 and 32.6(b), Ala.R.Crim.P., or the requirements of Strickland, supra. Therefore, the appellant is not entitled to relief on this claim.
 J.
Tenth, the appellant contends that his attorneys rendered ineffective assistance because they allegedly did not present sufficient evidence to support his motion for individual voir dire examination of the veniremembers. In addressing this contention, the circuit court found as follows: *Page 131 
 "The substantive issue concerning the trial court's denial of trial counsel's motion to sequester the venire during voir dire examination was fully addressed on direct appeal. Williams v. State, 601 So.2d at 1067-68. Williams' present assertion is that his trial counsel `unreasonably failed to properly support' that motion. He offered no evidence in support of this contention at the evidentiary hearing, but does address it at pages 52-53 of his Post-Hearing Brief. As noted by the Court of Criminal Appeals, `[D]uring voir dire examination, the appellant, as well as the state, had ample opportunity to question the veniremembers about their knowledge of the case at hand,' but, when asked, `only one member of the venire stated that he had any knowledge of the case,' and he was ultimately excused. Rule 32 counsel have made no showing, and have presented no argument, concerning how the lack of sequestered voir dire prevented adequate inquiry into and exploration of possible effects of pretrial publicity. Williams argues in his post-hearing brief that because the jurors were not sequestered `their answers could be heard by the rest of the venire.' However, he does not identify any such answer. He argues that non-sequestered voir dire `impeded Mr. Williams from making an adequate showing of pretrial prejudice.' Again, he does not explain how this impediment took place. There was no restriction on the right of either counsel to inquire concerning whether or not any venireperson had been exposed to any pretrial publicity of any nature or degree, and there was no restriction on the right of either side to request that a responding venireperson be asked to remain after the conclusion of the voir dire for `private,' individualized questioning. That was exactly the approach followed at the conclusion of the general voir dire with respect to numerous individuals who had given answers concerning various matters. (R. 294-324). Accordingly, even assuming that trial counsel's motion for sequestered voir dire might have been better supported, and even assuming that a better supported motion might have persuaded the trial judge to sequester the venire during voir dire, Rule 32 counsel have made no showing of prejudice resulting from a non-sequestered voir dire. To the extent that Rule 32 counsel fault trial counsel for having presented no evidence of pretrial publicity more recent than newspaper articles published over a year before the date of the trial (filed in conjunction with Williams' motion for a change of venue), they offer no evidence of subsequent pretrial publicity. They do state in footnote 8 at page 52 of the Post-Hearing Brief that `articles from Mr. Lemley's file following the hearings of March and August 1989' demonstrate that there was `continuing coverage.' In that regard, they reference `Attachment B' which consists of a photostatic reproduction of an article from the August 9, 1989, edition of The Tuscaloosa News. This item was not offered as an exhibit at the evidentiary hearing and was not otherwise placed in evidence. Certainly the court cannot now take judicial notice of something simply presented as an attachment to a brief. The handwritten annotations on the article, because of their content, seemingly are those of Williams. At any rate, there is no showing of `articles,' but rather only a single article appearing some 3 1/2 months prior to trial. The court finds that, at the very least, Williams has failed to satisfy the prejudice prong of the Strickland test as to the contention asserted in these two grounds." *Page 132 
(C.R. 676-78.) We agree with the circuit court's findings and adopt them as part of this opinion. Therefore, the appellant is not entitled to relief on this claim.
 K.
Eleventh, the appellant contends that his attorneys rendered ineffective assistance because they did not secure a speedy trial. The circuit court made the following findings concerning this argument:
 "This issue was not addressed or otherwise developed at the evidentiary hearing. The discussion of it in `Section O' of the Amended Petition simply posits a 23-month delay from Mr. Williams' arrest until the commencement of trial, and asserts that `Mr. Williams caused none of the delay.' The matter is discussed in a single paragraph of Williams' `Post-Hearing Brief' (pp. 61-62) with the citation of only a single case, to-wit, Mayberry v. State, 264 So.2d 198
(Ala.Cr.App. 1971). The Post-Hearing Brief asserts prejudice resulting to Williams from the delay is stated in general terms with respect to the increased difficulty in identifying and locating witnesses and other evidence which arises from the passage of time, and the particular circumstance that `Laura Wilkins, who was [Williams'] caregiver, died just before trial, not having been interviewed. . . .'
 "The speedy trial issue was raised by Williams on his direct appeal, and was fully addressed by the Court of Criminal Appeals. 601 So.2d at 1066-67. The court carefully analyzed the sequence of events commencing with Williams' arrest and concluding with his trial, setting forth a detailed chronology. With respect to Williams' claim `that he caused none of the delay,' the court found that `the record clearly contradicts this claim.' 601 So.2d at 1067. The Court of Criminal Appeals concluded that Williams `was not denied his right to a speedy trial,' and he has not shown that his `attorneys' were ineffective in not arranging for an earlier trial date."
(C.R. 711-12.) We agree with the circuit court's findings and adopt them as part of this opinion. Accordingly, the appellant is not entitled to relief on this claim.
 L.
Twelfth, the appellant contends that he was denied the effective assistance of counsel because of "the extremely low funding provided by the State of Alabama for the compensation of capital defense attorneys and their expenses." (Appellant's brief at p. 123.) See § 15-12-21, Ala. Code 1975.[1] However, he did not first present this contention to the circuit court in his original or amended petition. Therefore, it is not properly before this court. See Morrison, supra.
 M.
Thirteenth, the appellant contends that the cumulative effect of the above-alleged defects prejudiced him. However, as we have previously stated, when no single instance of alleged error constitutes reversible error, we will not consider the cumulative effect to be any greater error. See Mack v. State, 736 So.2d 664
(Ala.Crim.App. 1998), aff'd, 736 So.2d 681 (Ala.), cert. denied, 528 U.S. 1006, 120 S.Ct. 502, 145 L.Ed.2d 388 (1999);Crymes v. State, 630 So.2d 120 (Ala.Crim.App.), aff'd,630 So.2d 125 (Ala. 1993); Mims v. State, 591 So.2d 120 (Ala.Crim.App. 1991). *Page 133 
 IV.
The appellant further argues that, because his attorneys did not object to numerous alleged defects at trial, his rights on direct appeal were limited to review under the plain error rule.See Rule 45A, Ala.R.App.P. However, because he did not present this argument to the circuit court in his original or amended petition, it is not properly before this court. SeeMorrison, supra.
 V.
The appellant also argues that 23 alleged constitutional defects[2] that the circuit court found to be procedurally barred pursuant to the provisions of Rule 32.2, Ala.R.Crim.P., should be considered "independently to find that trial counsel was ineffective." (Appellant's brief at p. 132.) However, he did not first present this argument to the circuit court in his original or amended petition. Therefore, it is not properly before this court. See Morrison, supra.
 VI.
Finally, the appellant raises several ineffective-assistance-of-counsel claims that involve substantive issues he raised and this court reviewed under the plain error rule on direct appeal. See Rule 45A, Ala.R.App.P.
 "[B]ecause we determined that the remarks did not constitute plain error even if objectionable, appellant cannot relitigate the issue under the guise of ineffective assistance of counsel in a post-conviction proceeding. A finding of no manifest injustice under the `plain error' standard on a direct appeal serves to establish a finding of no prejudice under the test for ineffective assistance of counsel provided in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)."
State v. Clark, 913 S.W.2d 399, 406 (Mo.Ct.App. 1996) (footnote omitted). See also Clemmons v. State, 785 S.W.2d 524 (Mo.), cert. denied, 498 U.S. 882, 111 S.Ct. 229, 112 L.Ed.2d 183 (1990). This holding is consistent with prior Alabama caselaw. See Thomasv. State, 766 So.2d 860 (Ala.Crim.App. 1998); Hallford v.State, 629 So.2d 6 (Ala.Crim.App. 1992), cert. denied,511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 491 (1994). As we stated in Thomas:
 "In implicitly rejecting the underlying substantive issue as failing to present any plain error, Rule 45A, Ala.R.App.P., the Alabama Supreme Court implicitly found that the alleged error did not or probably did not adversely affect the substantial right of Thomas. Thus, we must concur with the attorney general that Thomas's ineffective trial counsel argument fails because, by virtue of the Alabama Supreme Court's implicit ruling, Thomas cannot satisfy the prejudice prong of Strickland."
766 So.2d at 953.
 A.
First, the appellant contends that his attorneys rendered ineffective assistance because they did not object to several allegedly improper jury instructions.
Initially, the appellant argues that his attorneys rendered ineffective assistance because they did not object to the trial court's refusal to instruct the jury on the lesser included offenses of felony murder *Page 134 
and first-degree robbery. However, on direct appeal, this court addressed the contention that the trial court erred in not instructing the jury on felony murder and first-degree robbery and concluded that plain error had not occurred. Specifically, we held that "[t]here was absolutely no evidence presented during the trial that would warrant an instruction on felony murder or robbery in the first degree." See Williams, 601 So.2d at 1075. Therefore, there was no basis for an objection by counsel in this regard.
The appellant also argues that his attorneys rendered ineffective assistance because they did not object to the trial court's jury instruction on reasonable doubt, which he contends violated Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328,112 L.Ed.2d 339 (1990). However, on direct appeal, this court reviewed the trial court's instruction on reasonable doubt and determined that plain error had not occurred. See Williams, 601 So.2d at 1076-77. Specifically, we found that "[t]he instruction in Cage is distinguishable from the instruction in the present case." Id. at 1077. Therefore, there was no basis for an objection by counsel in this regard.
Next, the appellant contends that his attorneys rendered ineffective assistance because they did not object to the trial court's instructions on circumstantial evidence and reconciling conflicting testimony. On direct appeal, this court addressed the sufficiency of the trial court's instructions on circumstantial evidence and reconciling testimony and did not find that there was any plain error in the instructions. See Williams, 601 So.2d at 1075-76. Accordingly, there was no basis for an objection by counsel in this regard.
 B.
Second, the appellant contends that his attorneys rendered ineffective assistance because they did not object to the prosecutor's allegedly improper comments on his choice to remain silent, his future dangerousness, and his and the victim's race. This court addressed the substantive issues on direct appeal and found that the comments did not rise to the level of plain error.See Williams, 601 So.2d at 1072-75. Consequently, there was no basis for an objection by counsel in this regard.
 C.
Third, the appellant contends that his attorneys rendered ineffective assistance because they did not object to the role the victim's widow played at trial. However, on direct appeal, this court reviewed claims concerning the victim's widow's role at trial and found that plain error had not occurred. See Williams, 601 So.2d at 1079-80. Therefore, there was no basis for an objection by counsel in this regard.
 D.
Fourth, the appellant contends that his attorneys rendered ineffective assistance because they did not object to the trial court's consideration of a presentence report that allegedly contained hearsay, uncounseled statements, and evidence of non-statutory aggravating circumstances. However, on direct appeal, this court reviewed the substantive claims regarding the contents of the presentence report and concluded that there had not been any plain error in this regard. See Williams, 601 So.2d at 1084-86. Accordingly, there was no basis for an objection by counsel to the use of the report in sentencing. Moreover, as the circuit court noted, it is clear from the sentencing order that the trial court did not consider any of the allegedly improper information when it fixed the appellant's sentence at death. (C.R. 703.) *Page 135 
 E.
Fifth, the appellant contends that his attorneys rendered ineffective assistance because they did not object to a comment the prosecutor made during his penalty-phase opening statement. Specifically, he contends that counsel should have objected when the prosecutor stated that the State would prove to the jury's "reasonable satisfaction" that the appellant deserved the death penalty. As the circuit court noted, the prosecutor had stated previously in his opening statement that the State had the burden of proving the existence of the aggravating circumstances beyond a reasonable doubt. Also, on direct appeal, this court reviewed the prosecutor's statement and concluded that, taken in context, it did not rise to the level of plain error. See Williams, 601 So.2d at 1080. Consequently, there was no basis for an objection by counsel in this regard.
Because the appellant has not shown that there was a basis for an objection by counsel on any of these grounds, he has not shown that counsel rendered ineffective assistance as he alleged.See Strickland, supra. Therefore, he is not entitled to relief on any of these ineffective-assistance-of-counsel claims.
For the foregoing reasons, the circuit court properly denied the appellant's Rule 32 petition. Accordingly, we affirm the circuit court's judgment.
AFFIRMED.
McMillan, Cobb, and Fry, JJ., concur; Long, P.J., recuses himself.
[1] This statute was amended in June 1999 to remove the cap of $1,000 for out-of-court work in a capital case.
[2] The appellant appears to concede that the 23 substantive claims are procedurally barred. To the extent he may argue that we should make an exception to our rules of preclusion, we decline to do so. To the extent he may argue that they are not barred, his argument is without merit. The circuit court properly found that the claims are barred pursuant to the provisions of Rule 32.2, Ala.R.Crim.P.